**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| CAROLYN BAILEY, )<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　Plaintiff, 　　　　　　　)<br>vs.　　　　　　　　　　　　　　　　　) 　No. 1:05-cv-943-SEB-JMS<br>　　　　　　　　　　　　　　　　　)<br>STANDARD REGISTER COMPANY, 　)<br>　　　　　　　　　　　　　　　　　)<br>　　　　　　Defendant. 　　　　　　　) | |

**Entry Discussing Motion for Summary Judgment**

Carolyn Bailey ("Bailey") was employed for a period of time by Standard Register Company ("Standard Register"). At a certain point, however, her employment with Standard Register was terminated. She claims in this case that the termination of her employment violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-54, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

Standard Register seeks resolution of Bailey's claims through the entry of summary judgment.[1]

**I. Summary Judgment Standard**

Rule 56(c) of the *Federal Rules of Civil Procedure* provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

---

[1]Bailey has conceded that she lacks sufficient basis to survive claims brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Standard Register's motion for summary judgment is therefore **granted** as to the ADEA and the Title VII claims for the reasons and based on the evidence proffered by it, and these claims will not be addressed further. Bailey has also abandoned her claim of unwarranted discipline under the ADA by not mentioning or defending this claim in her response to the motion for summary judgment. This claim also, therefore, will not be addressed further and the motion for summary judgment is **granted** as to it.

The moving party can satisfy the burden of showing the absence of a genuine question of material fact in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322-23.

> Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, [the non-movant] must respond to the defendants' motion with evidence setting forth specific facts showing that there is a genuine issue for trial. . . . To successfully oppose the defendants' motion for summary judgment, [the non-movant] must do more than raise a "metaphysical doubt" as to the material facts . . . and instead must present definite, competent evidence to rebut the motion.

*Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001) (internal citations omitted). The party opposing a motion for summary judgment is entitled to the benefit of all conflicts in the evidence and the most favorable reasonable inferences that the evidence will support. In determining whether a genuine issue of material fact exists, the court must construe all evidence in the light reasonably most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).

## II. Background

On the basis of the pleadings and the expanded record, the court makes the following findings of fact which consist of those facts as to which there is no genuine issue between the parties or, if such issue exists, represent the version most favorable to Bailey.

Bailey worked at Standard Register's Shelbyville facility as an Order Coordinator/Pricer in the Order Department. Standard Register hired Bailey on April 17, 1978, as a Collator Operator at the company's Shelbyville division. Standard Register promoted Bailey to the position of Order Coordinator/Pricer effective March 15, 1982. Bailey held this position until August 1998, when she requested and was granted a transfer to the Stanfast Center, a separate division of Standard Register located in Indianapolis. Standard Register does not typically permit "transfers" between divisions of the company, and because Stanfast is a separate division of Standard Register, an associate would typically be required to terminate employment with one division and rehire under another division, losing all seniority rights. Thus, an exception to the rule was made for Bailey as she was allowed to keep her company, but not departmental seniority.

When Bailey's mother became ill, Bailey called Shelbyville Plant Manager Ed Hlava ("Hlava") to request a transfer back to the Shelbyville division. Human Resources Manager Rosalie Hardin ("Hardin") and Hlava allowed Bailey to transfer back to the Shelbyville division rather than requiring her to terminate with the Stanfast Center and rehire with the Shelbyville division in May 1999. Again, this was an exception to Standard Register's guidelines, as an associate would typically be required to terminate employment with one division and rehire under another division, losing all seniority rights.

Hardin and Hlava specifically explained to Bailey at the time of her transfer back to the Shelbyville division that their decision to allow her to transfer instead of terminate and rehire would enable her to retain her company seniority, but not her departmental seniority. Bailey agreed to these conditions and understood that, upon her transfer back to the Shelbyville division, she would be the least senior person in the Shelbyville Order Department.

The Employee Handbook provides that employees "are often permitted to transfer from one job to another or one department to another within the Company. This can be done only when there is a vacancy." The handbook further provides:

> When an employee transfers from one job to another job, his/her seniority in the new job classification shall date only from the time such transfer is made. *In the event an employee transfers out of a job, then later transfers back into that same job, the most recent job start date will determine shift preference eligibility. However, the employee's seniority or length of service in the job will include all time worked in that job.*

Employee Handbook p. 28 (emphasis in original). The Handbook, however, does not address transfers between divisions.

In October 2002, Bailey met with Hlava, Hardin, and Order Control Manager Gordon Burns ("Burns") and expressed her unhappiness at the loss of her departmental seniority more than three (3) years before. Hlava, Burns, and Hardin reminded Bailey that her loss of departmental seniority was a condition that Bailey agreed to in May 1999, when she was allowed to transfer back to the Shelbyville facility and keep her company seniority. Bailey again acknowledged that her loss of her departmental seniority was a condition of her transfer back to the Shelbyville facility.

In June 2004, Bailey requested intermittent FMLA leave for the first time from Standard Register because of Hidradenitis Suppurativa ("HS"). Bailey's HS causes the formation of temporary cysts. Bailey claimed to have had this condition since 1975. The certification from Bailey's health care provider for her FMLA request restricted her work week to no more than 8 hours a day, 5 days a week, and from working overtime. Bailey's physician also indicated that Bailey might periodically be required to miss work during normal business hours because of her condition. Finally, Bailey's health care provider restricted her sitting and standing, but only in that she be allowed to get up from her desk one time per hour. There was nothing her doctor ever directed or requested that Standard Register did not grant. Further, Standard Register granted Bailey's requests for leave.

From August 3, through August 6, 2004, Bailey was on disciplinary layoff for four days. She was off on a previously scheduled vacation from August 9, 2004 to August 13, 2004. Hardesty, Hlava and Hardin met with Bailey on August 3, 2004, to administer the disciplinary layoff.

Standard Register's corporate headquarters informed the company in a memorandum dated July 30, 2004, that a reduction in workforce was being mandated for all facilities, including Shelbyville. Hlava and Hardin met on August 9, 2004, to perform a review of all departments in the facility to determine in which of the departments cutbacks could be made to meet the corporate mandated workforce reduction.

Hlava and Hardin selected three (3) departments for reductions for productivity reasons, including the Production/Bindery department, the Production Control Department, and the Order Department, the last of which Bailey was a member. Individuals within these departments were selected for termination by departmental seniority. As a result of her transfer from the Stanfast Center in 1999, Bailey had the lowest seniority in the Order Department. At the time of the reduction in workforce, Bailey had approximately 25 years of seniority with the company, but it was not on this type of seniority that the reduction of workforce was based. Bailey's employment was terminated within two months of when she first requested FMLA leave.

In all, five (5) individuals were terminated as a result of the workforce reduction: Heather Rigby, Jennifer Ragin, Angela Wells, Linda Alford, and Bailey. Alford volunteered for the reduction in force. Standard Register notified Bailey and Rigby of their terminations to be effective August 16, 2004. Ragin and Wells were terminated on September 1, 2004. Alford, who volunteered for the reduction in force, was terminated on September 21, 2004. None of the individuals selected for termination had any known disabilities. Rigby and Ragin had never taken FMLA leave at Standard Register. Bailey's position was eliminated and has not been filled.

### III.  Discussion

#### A.  Statutory Overview and Methodology

The two statutes through which Bailey seeks redress are the FMLA and the ADA.

- The FMLA gives eligible employees the right to take up to twelve work-weeks of unpaid leave during any twelve month period for specified reasons, including because a "serious health condition" makes the employee unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1)(D). The FMLA, 29 U.S.C. § 2615(a)(1), declares it unlawful for an employer to interfere with, restrain or deny the exercise of or attempt to exercise any right provided under the FMLA. Bailey claims retaliation pursuant to 29 U.S.C. § 2615(a)(2), which prohibits discrimination or retaliation against employees who exercise their rights under the FMLA.

- The ADA forbids certain employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

4

Bailey may prove her discrimination claims either by presenting direct evidence or by relying on the indirect, "burden-shifting" method of proof outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). These models are applicable to both a retaliation claim under the FMLA, *Burnett v. LFW Inc.,* 472 F.3d 471, 481 (7th Cir. 2006); *Watkins v. Henderson,* 2001 WL 219807 *16 (S.D.Ind. March 5, 2001)(Barker, J.), and a claim under the ADA. *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1089 (7th Cir. 2000).

Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). The direct evidence must show that the defendant said or did something indicating discriminatory animus with regard to the specific employment decision in question. *Id.* In short, "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers,* 320 F.3d at 753 (citation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003).

Under the alternative method, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. *First,* the plaintiff must establish a *prima facie* case of discrimination. *Second,* if the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981)). *Third,* if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802-04; *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

If Bailey has failed to offer direct evidence in support of either her FMLA or her ADA claim, the court will undertake its analysis as to each claim under the indirect, burden-shifting methodology described above. "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993)(citing *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir. 1990)). If a *prima facie* case is established or is assumed, *see Nawrot v. CPC Int'l,* 277 F.3d 896, 906 (7th Cir. 2002) (electing to turn directly to the question of pretext), a pretext analysis will be undertaken.

### B. Analysis - FMLA Claim

"A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act."

5

*Kaufman v. Federal Express Corp.,* 426 F.3d 880, 884 (7th Cir. 2005). As already explained, Bailey asserts discrimination/retaliation.

While the FMLA provides certain substantive guarantees, "the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act." *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). In a case where an employee is alleging retaliation based on the FMLA, "[t]he issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (citing *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 160 (1st Cir. 1998)).

- Under the direct method of proof, Bailey must present direct evidence of "(1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two." *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003) (citing *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002)).

- To proceed with an FMLA retaliation claim under the indirect method, Bailey "must show that after taking FMLA leave (the protected activity) [s]he was treated less favorably than other similarly situated employees who did not take FMLA leave, even though [s]he was performing [her] job in a satisfactory manner." *Hull v. Stoughton Trailers, LLC,* 445 F.3d 949, 951 (7th Cir. 2006).

Bailey's employment was terminated within two months of when she first requested FMLA leave. Bailey contends that the suspicious timing of her employment termination created a causal connection sufficient to create an inference that Standard Register's action was taken for retaliatory reasons. Although the second type of evidence permitted under the direct method is circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker, *see Treadwell v. Office of Ill. Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006), the Seventh Circuit has held that "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.*, 472 F3d 930, 939 (7th Cir. 2007) (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004)); *see also Burks v. Wisconsin Dept. of Transp.*, 464 F3d 744, 758-59 (7th Cir. 2006) (where only evidence of timing of termination was presented, plaintiff failed to meet her burden under direct method of proof in support of her claim of retaliation)."The mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). The plaintiff must put forth other evidence that reasonably suggests that her protected activity was somehow related to her employment termination. *Id.* Bailey does not present additional evidence of retaliation, and therefore her claim fails under the direct method of proof.

Under the indirect method of proof, a similarly situated employee is one who is directly comparable to the plaintiff in all material respects. *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003). At least one factor to consider under these circumstances would be other employees' departmental seniority, the criterion on which the reduction in force was based. Bailey acknowledged that Standard Register believed that she had the least departmental seniority in the Order Department after her transfer back to the Shelbyville Division.

6

Bailey asserts that she should enjoy the benefit of every reasonable inference drawn from the facts, and that because there is no evidence as to whether any other individuals were directly comparable to Bailey in all material respects, the court should conclude that a genuine issue exists as to whether similarly situated employees were treated more favorably. This ignores the burden of proof, however, which falls on Bailey. A complete lack of evidence does not translate to a finding in favor of the non-movant. Because Bailey has not shown that only she, and not a similarly situated employees who did not file a request for FMLA leave, was terminated from her employment, Bailey has failed to establish a *prima facie* case of retaliation under the indirect method of proof.

Even if Bailey had established a *prima facie* case of retaliation, Standard Register has presented evidence of a legitimate non-retaliatory reason for the termination of Bailey's employment: a corporate mandated reduction in force. Individuals were laid off pursuant to the reduction in force based on departmental seniority.

Absent direct evidence of pretext, Bailey may show the proffered reason for her termination was pretextual by pointing to evidence which would tend to prove the proffered reason was factually baseless, not the actual motivation for the discharge, or insufficient to motivate the discharge. *Nawrot v. CPC Intern.,* 277 F.3d 896, 906 (7th Cir. 2002). It is not enough to show the decision was "'mistaken, ill considered, or foolish.'" *Id.* (quoting *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000)). This court does not sit as a super-personnel department; our only concern with respect to pretext is the honesty of an employer's explanation. *Id.*

Bailey argues that the Employee Handbook directed that layoffs would be conducted on the basis of job classification, which she asserts means company seniority. She contends that the fact that the company's decision to base the reduction in force on departmental seniority rather than company seniority was contrary to company policy and creates an inference that such decision was a pretext for retaliation. A reading of the term "job classification seniority" as used in the Shift Assignment portion of the Handbook, however, indicates that that term relates to the job start date of a particular job, rather than an employee's overall seniority with the company. ("In the event two employees apply for a shift transfer when only one opening exists, that employee with greater job classification seniority, based on the most recent job start date, shall receive preference. *The job start date is the date an employee is officially assigned or transferred to a job. In the event an employee transfers out of a job, then later transfers back into that same job, the most recent job start date will be used to determine shift preference.*" Employee Handbook p.25. emphasis in original). The same reasoning applies to the use of the term "job classification" in the Transfers sections of the Handbook on page 28. Moreover, the court will not second-guess the company's business decision to base the lay off decisions on departmental seniority, and there is no *per se* rule that a company's basis for a RIF must arise from a long-standing company policy. There is no evidence that the decision to apply departmental seniority to the reduction in force was applied inconsistently, or that it was unworthy of credence or was applied dishonestly.

In addition, Bailey argues that she should not have lost any seniority because she never changed jobs when she transferred from one division to another. The determination that Bailey's departmental seniority would be removed upon her transfer was made approximately five years before she requested leave under the FMLA. Bailey concedes

that the Handbook does not address nor control transfers between divisions of Standard Register, the type of transfer at issue in this case. Regardless of what the Employee Handbook policies indicated, if anything, with regard to an employee's loss of seniority in various transfer situations, the loss occurred long before Bailey engaged in protected activity and such loss of seniority therefore cannot be evidence of retaliation. In addition, because it is undisputed that Standard Register had an honest belief in 1999 that Bailey lost her departmental seniority when she transferred back to the Shelbyville facility, Bailey cannot establish pretext with respect to the loss of her departmental seniority. At the time of the work force reduction, Standard Register believed that Bailey had the least departmental seniority of any of the Order Coordinators in the Order Department. For all of the above reasons, Standard Register is entitled to summary judgment with respect to Bailey's FMLA claim.

### C. Analysis - ADA Claim

For her ADA claim, Bailey must satisfy the four requirements for a *prima facie* case by submitting evidence that, if believed, would show that: (1) she is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Rooney v. Koch Air, LLC,* 410 F.3d 376, 380-81 (7th Cir. 2005).

The term "disability" is defined under the ADA as: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment by her employer. 42 U.S.C. § 12102(2); *Rooney,* 410 F.3d at 381. Bailey argues only that the first definition applies in this case.[2]

Bailey contends that when her cysts are "full-blown" she is unable to sit, stand, walk and lay down. The evidence she relies upon in support of this position is the form that her family physician completed. He responded to a question asking whether Bailey was unable to perform any of the essential functions of her job by stating "yes." He listed the essential functions she could not perform as "sitting and standing," "needs to be able to get up from desk 1 time per hour," and she should not work more than 8 hours a day, 5 days a week.

Bailey has not presented any evidence showing how often her cysts are "full-blown." Nor has she presented evidence showing to what degree her physical condition prevents her from sitting, standing, walking or laying down. The medical evidence shows only that she cannot work more than 40 hours a week and must be allowed to stand up once an hour. This does not constitute a substantial limitation of these activities. *See*

---

[2] Bailey stated in her deposition that after she told her superiors about her condition, she was "treated like she had the plague." She has not presented any facts as to what she meant by this comment or how she was treated differently by her employer at that point. Bailey's statement is conclusory and does not trigger any further analysis as to whether Standard Register "regarded" Bailey as having a disability. Indeed, Bailey also stated in her deposition that Standard Register did not believe she had a disease.

*Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 756 (7th Cir. 2006) (to be substantially limited, an individual must have an impairment that prevents or severely restricts the individual from performing activities of central importance to most people's daily lives). In *Burks*, where the plaintiff could work an eight hour work day but could not sit for more than three hours at a time, her ability to sit or stand was not prevented or severely restricted. *Id.* at 756. The same reasoning applies in this case.

Because Bailey has not shown that a genuine issue of fact exists as to whether she has a disability, she is not entitled to protection under the ADA. Nor has she presented evidence of any similarly situated employee who was not disabled but was treated more favorably. Even if she could satisfy the elements of a *prima facie* case, Standard Register has articulated a non-discriminatory reason for its employment decision. The same rationale applies to the issue of pretext as discussed in relation to the FMLA claim, and therefore, Standard Register is entitled to summary judgment as to Bailey's ADA claim.

### IV. Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). As the non-movant, Bailey bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003) (citation omitted). As explained herein, Bailey has not come forward with evidence that establishes a *prima facie* case as to either of her claims and, even if she had, she has not shown that Standard Register's proferred reason for its action was pretextual. Accordingly, Standard Register's motion for summary judgment must be **granted.** Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

**IT IS SO ORDERED.**

Date: 02/28/2007

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana